Which is Patricia G. Williams v. Brf H.H. Shreveport, LLC, et al. May it please the Court, this Court should reverse the grant of Biomedical Research Foundation's motion for summary judgment and remand this case to trial on all retaliation claims, including the permanent position denials. After reading the lower court's opinion, I believe this panel will see that there has been a gross miscarriage of justice relating to the facts and law of this case. The lower court took the material disputed facts of the case relating to the termination verbatim from Brf's motion for summary judgment. I note that in the factual and procedural account in the opinion at the lower court, the lower court cited to Brf's evidence 60 times compared to citing to Ms. Williams' evidence she submitted, which was, I believe, 50 exhibits, cited to our facts four times in the factual and background statement. The opinion is not well analyzed in all respects, including the termination claim. And it left at least four claims unaddressed under the law and analysis portion of the opinion, and that's found in ROA 1960-1925 would be the opinion of the court. There will be no dispute that both parties in the motion for summary, filed a motion for summary judgment, filed a response, and a reply specifically and in detail addressed five adverse actions to be analyzed by the lower court. Brf may argue that the claims for the vice president of special projects and executive director of surgical services was referenced briefly in the factual statements and background, and that this satisfies the court's duty to adjudicate these claims. However, Brf would have to ignore the summary judgment opinions that are routinely written and analyzed to include a statement of facts as neutral as possible in one section, a law and analysis in the other, and a conclusion. It would also . . . Counsel, I just want to be sure I understand what happened below. Did the district court make a determination that your client failed to make out a prima facie case on her claim of retaliation? Yes, for the termination only. All right. So obviously your contention is that that was error. That was error, and I will get to that point as well. All right. Addressing the reason why the lower court erred in stating that there was no causal connection, the first error, the lower court did not link the offer of the temporary position with the termination. As an aside, it's undisputed that Ms. Williams was denied two permanent positions before being even offered this temporary position. That is the Executive Director of Surgical Services and the Vice President of Projects . . . Special Projects, which became the Chief Nursing Officer position. She was offered those? Those were offered to other individuals. Oh, okay. They were permanent positions as opposed to the temporary position offered only to Ms. Williams. Let's look at the time frame because I believe it's very important that the court look at the sequence of events in assessing the connection between the temporary position as the Assistant Hospital Administration over the clinics and the reason for termination. We contend that they are one and the same. The court, the lower court, however, ignored this argument and instead changed BRF's motion for summary judgment to the opinion of the court. Many of the facts were highly disputed and would have affected the outcome of this case. The causal connection is what the lower court focused on. The lower court limited its analysis to the causal connection being only proven by close proximity and time to the protected activity and the adverse action. What the court did in that situation was it stated that they became aware of the adverse action in August of 2013 and she was terminated in January 2014. The court concluded that that four and a half month period was too long to establish the causal connection. I will add that we not only proved our case in close proximity and time to the adverse action and the protected activity, but we also listed on pages 12 and 13 of this brief and it was also presented at the lower level, other conduct that was retaliatory in nature that would have connected the lawsuit, that would have connected the adverse action or the protected activity with the termination in January 2014. The record shows unrefutably that Ms. Williams was only offered the temporary position that the court will recall, there is an email dated August 2nd, 2013, where Ms. Austin, who is the decision maker at this time for the position, the temporary position, claims that she had a conversation with Ms. Williams about the position being temporary, about the job description changing after 20 years to require a person to have experience as a federally qualified health care center. Of course, Ms. Williams would not have that experience at the time. Or some type of specialty model, this is where they were moving. This conversation never happened with Ms. Williams. Let me make sure I understand, one of your complaints is that it was an adverse employment action when they determined that her position would be temporary because no one else was made temporary. Yes, exactly. No one else in the clinic was made temporary. BRF's entire argument is we were going to restructure the clinics and so we had to make her position temporary until the restructuring occurs. That's an adverse employment action in your view that was closer in time to the protected activity. Protected activity was the filing of the lawsuit? Yes, no, the protected activity was their knowledge of the lawsuit pending at the time they came on. See, the employer was purchased by, or I guess assumed the role, BRF assumed the role of staffing. Well, BRF learned about a lawsuit having filed against LSU. Yes, they learned of the lawsuit in the summer of 2013. The memo that- So her protected activity was the filing of the lawsuit? The protected activity was the filing of the lawsuit, yes. All right, I thought you disagreed with me. No, no, no, no, no. All right. And so the time in which the court should have assessed when this occurred, I don't believe four and a half months is a stretch to break the causal connection, but I believe the court did not apply the correct time. The time should have been in August of 2000, August 17th is the actual date, when the employer offered Ms. Williams a temporary position. What's the evidence with regard to when the employer learned of her protected activity? The employer states, and I believe it's in the brief of BRF, that they were aware of it the summer of 2013. So that would be June 21st, 2013, if we're technical about it, until September. What you're saying is only several months transpired between the time they first learned of the protected activity and the time they took an adverse employment action against her. In other words, they made her position temporary. Yes. All right. Very, very short period, maybe a six to seven week time period. Therefore, we believe the causal connection is established. You cannot disconnect the temporary position with the reason for termination, because they're not the same. I was just going to, did they, why did they tell her that she had to be, have a temporary position only? They said they were restructuring the clinics. But they did not? They did not restructure the clinics. They did not cover? Part of your conduct you're talking about that shows a causal connection. Correct. In addition to just proximity and time. Correct, Your Honor, and we believe it also shows pretext as well later on down the road. I think our case is, tell me if I'm wrong, but they seem to be kind of mixed on temporal proximity. And some say that a span of a couple of months, six or seven weeks, would be very close and you can infer a causal connection. And other cases seem to kind of cut the other way. There doesn't seem to be a consistent thread on what kind of is satisfactory under temporal proximity. That is correct. In reading the case law, there has been two years being sufficient. And I think in my brief, I have a case where there was three years between the protected activity and the adverse action. So it all depends on the facts. But what we have here is not only close proximity and time, but we have a list of things on page 12 and 13 of the brief that says that Ms. Williams was repeatedly harassed after BRF took over the hospital on October 1, 2013. She was excluded from meetings. She was taken off the list of very important people that would be in control of the hospital. As an assistant administrator, you are responsible for the hospital and they all had uncalled duties. She was removed from this. You mentioned that the district court committed some legal errors in its analysis of a prima facie case. Yes. What were those? The causal connection. I believe the first and third elements were not disputed. The only issue the court had and BRF had would be the causal connection. And so we believe the causal connection is established not only in time, in the close proximity, but in the fact that Ms. Williams was not in a position to assess the proper timing. Did the court also say that there must be a but-for cause at the prima facie case? No, the court did not say that in its opinion, from what I can recall. The court simply stated that there was too much time had passed and that all the other evidence that was filed was speculation and it was conjecture. And I was like, well, how can they be both? It's either evidence or it's conjecture. I'm getting to the end of it. You mentioned, you know, beyond the temporal proximity. Yes. You just ticked off some other things that tend to show, in your view, kind of discriminatory  And unless I kind of overlooked it, you don't, it seems that your briefing doesn't identify often who those decision makers are. Whether they were the same decision makers who perhaps were the ones who took the action on what we're talking about here, which is the termination. So what kind of overlap was there between the decision makers or the action takers as to those allegedly retaliatory actions and those that resulted in the termination? From what we were told, the decision makers in this case were Mr. Cassio, Mr. Lindsay, Ms. Milgaard. All of them had a connection, with the exception of Mr. Cassio, with Ms. Williams not receiving the permanent positions and receiving a temporary offer. Now, Ms. Austin says she was removed from the situation because she was gone by that time. But I believe because her August 2nd email is directly inconsistent with Ms. Williams' testimony, that cannot be considered evidence. Well, in that connection, let me ask you this. Yes. Is there any significance at all to the fact that the lawsuit was brought against LSU, the state, and then when BFR takes over, you have this private ownership. And so the people against whom the lawsuit were brought are not now, I say the people, at least the owner, the employer, is a different employer from the employer against whom the lawsuit was filed. Now the lawsuit is BRF. Correct. Any significance at all? No, sir. To that fact? I mean, we've now changed employers. Yes. So you're saying that BRF retaliated against her for something she filed against her prior employer. Correct. Mr. Lindsey, the HR person, the director, said that it was common knowledge that Ms. Williams had filed this suit that was brought over into BRF. It was something that BRF knew. Mr. Cassio, Ms. Milgaard, all of them admitted that they knew the lawsuit was going on at the time. And I don't know whether or not this is in the record, but so legally when BRF takes over, they take over, they get all the assets, all the liabilities, all the claims that are pending, all of those now belong to BRF. So they've got to defend the lawsuit. No, I don't think so. I think this is a separate cause of action because you're dealing with BRF now retaliating. It's not LSU retaliating, although some of the individuals were moved, most of the employees were moved over to BRF. BRF is that they're making the decisions. They were not there at the time LSU lawsuit was going on. They came at the very, very end, and because of their knowledge, they used that against her to retaliate. In closing, and I see my time has expired, we would . . . You have some time on rebuttal. Okay, thank you. We would just request . . . I can save this until the end of rebuttal. Thank you. Okay. Mr. Crawford. Is that right? Good afternoon, Your Honors.  Oh, I'm sorry, Mr. . . . I'm Brian Crawford. I'm Brian Carney on behalf of the Defendant Appellees. After one looks at the record, and the record is fairly extensive in this case, especially based on plaintiff's submissions, I could see where somebody might come away. There are a lot of things that Ms. Williams is complaining about in this case, especially when you couple that with the fact that we arguably have up to seven challenged adverse employment actions that she is saying are evidence of her retaliation lawsuit here. But something that we cannot lose sight of is the ultimate issue in this case, the one where a plaintiff bears the burden, and that's the issue of causation. Because whether you're looking at this case like the district court did as to the prima facie case, or whether you look at the ultimate burden, there is no doubt based on the case law of this court that the plaintiff at both stages has to present some evidence, not argument, not speculation, but evidence showing . . . The evidence at the prima facie stage is not nearly as . . . the requirement there is not as strong. That doesn't have to show . . . she doesn't have to show that but-for cause was there at that point. Is that right? You are correct, Your Honor, but there has to be some evidence to at least be able to link or be able to say there's some causal connection. Didn't the judge mistake what he . . . did he imply a but-for cause at the prima facie case? The judge . . . the district court in this case focused primarily on the temporal proximity between the knowledge of the protected activity and then the challenged act. I mean, obviously . . . and he found that they didn't present sufficient evidence even at the prima facie case. That's the only thing he concentrated on, right? That was the basis of the district court's opinion, but as we know, even if this court disagreed with the district court's analysis, this is a de novo review of a summary judgment and if there's another basis on the issue of causation which would allow this court to affirm the summary judgment, you are able to do so. What is that? Have you shown that? Yes, and I'd like to address the issue here. Whether you're at the prima facie case or at the ultimate burden is to present some evidence of a causal connection. The key is, especially here where we have the decision makers coming from Alvarez and Marcel, an outside consulting firm that was just to come in to help transition this hospital from a public entity run by the state of Louisiana to now BRF, who was effective October 1st of 2013, was going to be managing the hospital going forward. It's not the knowledge of the actual lawsuit that was filed in 2008, or the charge, or the lawsuit in 2010, but it's the decision makers' knowledge of that protected activity. That's the critical element, the critical issue in this case. The reason why I say that is because when you look at the undisputed evidence in this case, all but one of the Alvarez and Marcel decision makers testified that while they knew, generally had awareness about the fact that Ms. Williams had filed a lawsuit, when they were asked about what their knowledge was of the details of that lawsuit, they did not know. They said that they were not told that. And that is key, because in order to state a retaliation claim under Title VII, the plaintiff bears the burden of showing that these decision makers were aware that the plaintiff had engaged in some protected activity. If that lawsuit had been a workers' comp lawsuit, or it had been a slip and fall, or maybe concerning some unpaid wages, that would not form the predicate basis for being able to have a retaliation claim under Title VII, because that's not the protected activity under Title VII. She has to show that the evidence is that they were aware, not only that they filed a lawsuit, but that they knew the lawsuit was for, in this case, race discrimination. That's the protected activity. And without that ... They had to know the lawsuit was for race discrimination? They had to know that she was opposing, specifically, race discrimination, or some other form of discrimination that is prohibited under Title VII. Pardon me? They had to know that she filed a Title VII lawsuit. Correct. They did. So it didn't have to be race, did it? But the question in this case is what their knowledge was. Did they know that she had filed a lawsuit for discrimination? And when you go back and look at the records, and I'll start with Kathleen Milgaard. She was the decision-maker with respect to this VP of Special Projects. Or no, the executive ... She was there when LSU had the facility? No. This is somebody from Alvarez and Marsall that was brought in to help do the transition. Kathleen Milgaard, and it's on page 1373 of this court's record. Specifically, page 51 of Ms. Milgaard's deposition testimony. When she was asked by plaintiff's counsel, was she generally aware of the lawsuit? Yes. Did you know it was for race discrimination? No. And again, that's in the record. With respect to that ... She knew she had filed a lawsuit against her employer. She knew that. Somebody told us that she had filed a lawsuit, but she didn't know what the details of the lawsuit. Again, if this was a lawsuit for a slip and fall, and then somebody wanted to retaliate ... And Kathleen Milgaard, that's what her understanding of that lawsuit was. And she decided ... What's the case that says they had to know what type of lawsuit it was? It's the Stanley v. Rogers case, as well as the Strong v. University. It's cited in the brief, but I think it's University Health System. And those two cases were also cited in the district court's opinion. But again, those cases stand for the proposition. It's not just knowing about the lawsuit. You've got to know about ... It's the employer's knowledge of the actual protected activity. Well, the actual protected activity was filing a lawsuit. Filing ... But they didn't know what the lawsuit was. All right. They didn't know it was a Title VII suit. Correct. Would they have been more upset or likely to retaliate, depending on the subject matter? I guess that depends on the individual ... Are some lawsuits not as irritable as others? Some ... If it's a slip and fall, or somebody says, I sued somebody because their child hit me over the head with a lollipop, I would say that's going to be ... You're going to give less credence or worry about that less than if it's something like ... And if it's race discrimination, you're more likely to be guilty of race discrimination than hitting somebody over the head with a lollipop. You're not saying that, are you? No, I'm not saying that. All right. You have to ... The decision maker has to know that you had engaged in some activity that is prohibited under Title VII. Let's move beyond that, because Judge Dennis has been asking about this but-for causation, and didn't the judge mention that? And I guess it sounds like we made it up, except I'm looking at the judge's order on page 10, and right here he says, His mere knowledge of Williams' past lawsuit on the part of A&M is insufficient to survive summary judgment given the but-for causation standard. I'm just reading that from his order. Yes, that's what his decision says. Sounds like he took that into account, doesn't it? Again, I can't get into the particular judge's mind, but but-for causation is ultimately the standard. That's reflected in what he wrote. That is the standard that... Williams must show that her protected activity was a but-for cause of the employer's adverse employment action. And that is her ultimate burden, to show but-for cause. Those are the judge's... Not at the prima facie stage. I'm not saying... And I would agree with you. I'm not taking the position that you have to show but-for cause at the prima facie stage. But the judge took that position. That's correct. Well, and that was there, wasn't it? That could be error. But like I said before, this court's... This is a de novo review of summary judgment. And if there's another basis to affirm that, you are entitled to do that. The Aireens v. Wal-Mart stores case says that. The Thomas v. Chase Manhattan Bank says that. What other basis is there for the judge not finding the fact she made a prima facie case? Because, again, one, there's no knowledge that all but one of these decision-makers even knew that she engaged in any protected activity. Number two, you know, Sandra Austin is the only one who said, when she was asked about the details, did you have knowledge it was a race discrimination case? And she said, yeah. She was essentially the lead of this particular project. And she is the decision-maker with respect to the VP of Special Projects position, as well as she was there, and she was the one who decided to give Ms. Williams the offer of temporary employment in her same position. So when we look at those particular positions, the VP of Special Projects position, Ms. Austin actually called that the VP of Special Projects, Nursing Performance Improvement, and Patient Experience. This is the one that Jackie Robinson Blake was ultimately selected by Ms. Austin over the plaintiff for this particular position. It is undisputed that Ms. Austin said that this was going to be a newly created position, effective October 1, which is when the BRF transition would take place, and this was a focusing on achieving magnet status for the clinics, or to the hospital, and basically that magnet status means there's a certain set criteria that a hospital has to meet in order, and it's based on the quality and strength of the nursing program to be able to get this, and that's what she was creating this position for. At the time, Jackie Robinson Blake actually was the CNO, the Chief Nursing Officer of that, of the hospital. That is one of the highest level positions at a hospital as part of the C-suite. She had been in that position since 2012 when she was still, the hospital was under the LSU umbrella, and she had been selected for that in the interim capacity. This is the same position that Ms. Williams had been trying to get going back to 1995, and that's actually what precipitated her lawsuit, is when a white female was given that Chief Nursing Officer position in 2008, that's what precipitated her to file that race discrimination charge with the EEOC, and which ultimately led to the lawsuit. Ms. Austin believed after interviewing both the plaintiff and Jackie Robinson Blake that she believed that Jackie Robinson was better suited for that particular position, especially given she's the Chief Nursing Officer. For at least the last year, she's been supervising over 550 nursing staff. They both had Masters in Nursing Administration, but again, you know, going back to the 90s, the plaintiff had not worked, she worked solely in the clinics, and Ms. Robinson was the Chief Nursing Officer over the entire operation when she was placed in that position in 2012. Ms. Austin also testified that plaintiff seemed to be more, her skill set seemed to be, like, she was better suited for it. Can you give me the site for that Stanley case you talked about earlier? Stanley versus Rogers? I'm trying to look at the good part. I pulled it up in your brief, but that doesn't seem to be the correct site. 202 Federal Supplement 3rd 655 and then it was affirmed by this court in Federal Appendix 680. Federal Appendix 326. With respect to Ms. Robinson, again, Ms. Austin believed that Jackie Robinson was better suited for that position. What evidence does the plaintiff have in this case to suggest that there's any causal connection between Ms. Austin's decision as to that and her prior protected activity? You've got timing? I'm still confused as to your answer to this question. On what basis could we affirm the district court if it applied the incorrect causation standard at the prima facie stage? Because you could still say that she did not establish a prima facie case because with respect to... Where else did she fall short? Again, with respect to all but the decisions that Ms. Austin made, none of the other decision makers knew that Ms. Williams had actually engaged in opposition activity under Title VII. So that's one basis. The second basis is that there's obviously you could go past the prima facie stage. BRF clearly presented legitimate non-retaliatory reasons for each of the seven challenged decisions in this act and then that means that the burden of causation now follows solely squarely on the plaintiff. Okay, so going through the prima facie elements one by one. Okay, so the employee engaged in activity protected by Title VII. Are you disputing that? I'm not disputing that. Two, the employer took adverse employment action against the employee. Not getting hung up on why or motivation, but took adverse employment action. Yes? Arguably except with all but one of them. And then three, a causal connection. Not but four but a causal connection exists between that protected activity and the adverse employment action. But that third element is not just the causal connection between the fact that she engaged in a protected activity, it's the employer's knowledge of that protected activity. I just read it verbatim from one of our cases. A causal connection exists between that protected activity and the adverse employment action. I believe, like the Mendina versus Ramsey case, which is something that the plaintiff cited in her briefs as well as in her opposition to the summary judgment, that talks about it being the employer's knowledge. I do believe that some of the cases out there sometimes glance over the fact, especially when the person who is accused of being the one who did the retaliation is also the same person who was accused of doing the discrimination in the first place. You can't disagree that the causal link required in prong three of prima facie is not as stringent as the but four standard that's required at the pretext stage. I would agree with you. But again, this case should not survive summary judgment if she can if there is no evidence in the case that there is a causal connection between the decision maker's knowledge of the protected activity and the challenged adverse activity. Because without that, her whole case falls. Well, I've had enough time to read this Stanley case and I just don't see what you say. So, you got the quote from that case that says it stands for the proposition that they would have to know the specific nature of the claim involving the protected activity, which in this case was the filing of a lawsuit. I don't believe it says it in that. I think it says the employer's knowledge. Alright. That's the language that I'm saying when I cited those cases. They're saying that the third element of the prima facie case is a causal connection between the employer's knowledge of the protected activity and the adverse activity. So, we don't believe even if you go to the ultimate issue of causation with respect to really any of the positions, she cannot establish and this court standard is she has to establish a conflict of substantial evidence that with respect to these challenged decisions that decision would not have been made that result would not have happened, but for knowledge of that protected activity. And again, it's our position that she cannot do that. At the prima facie stage? No, that's the ultimate. This case should not proceed to trial if she doesn't have that evidence in the lower court proceeding. And again, I'm not getting into the nuance between prima facie case. I think you've conceded that she wins at the prima facie stage. You've conceded that what the judge did was error at the prima facie stage. Although you may disagree, I strongly feel that if you cannot show that the decision maker knew that she engaged in protected activity, knowledge of a lawsuit is not enough. It has to be knowledge that the lawsuit was for some activity that's prohibited under Title 7. Without that, she loses. And I see that my time is almost up. I think I've indicated my position, unless the court has any other questions. I don't have anything else. Thank you. You have five minutes on the bubble. Thank you. Your opponent says even though the judge made an error of law in assessing the prima facie case, that the evidence is so devoid of any evidence that would support her prima facie case that she was discriminated against because of her previous protected activity that he's entitled to some judgment anyway. Yes. The focus has switched now by BRF and now they're arguing they didn't have knowledge of the protected activity when Mr. Lindsey had knowledge. I believe the record entry is 504, 592, 593, 670, 629, 640, 284, 1029, and also 1171 where the decision makers as it relates to the termination were not even given to the permanent positions stated that they had knowledge of the lawsuit and three of them had knowledge to my recollection had knowledge of the Title VII discrimination claim. The HR Director Mr. Lindsey who was directly involved in that actually walked Ms. Williams out of the workplace without her being able to retrieve her things in front of everyone humiliating her actually said he knew about the case, knew what it was about believed Ms. Williams was a troublemaker. He specifically said that under oath in his deposition so the HR Director is the person who you go through in order to determine whether... Unlike some lawsuits in a Title VII claim it has to be an O.C. claim, an administrative procedure where the employer would receive notice of the administrative proceeding which would precede any lawsuit being filed. It's a necessary prerequisite to the filing. That is correct. So we have refuted in our brief that the knowledge was of discrimination maybe not the type of discrimination but it was protected activity. I'm going to move on because there was a lot of discussion about the positions for VP of special projects. Clearly if Ms. Austin who was the decision maker in that case, if Ms. Austin had knowledge of the lawsuit which she said she had knowledge of the Title VII lawsuit, then there could be retaliation in not giving her that position because she was clearly more qualified than Ms. Robinson-Blake. Ms. Robinson-Blake never served as CNO permanently. She served in the interim capacity for approximately one or two years and she did not have the requisite educational requirement. At the time there was a lawsuit pending for race discrimination and LSU decided to put Ms. Blakes in that position so it wouldn't look so bad. She would be the first black person to hold that position who did not have the required educational requirement. That is because another case that settled Ms. Keels who is actually a person that gave testimony in this case regarding her claim of discrimination. It can't be refuted reasonably that Ms. Blakes had more Ms. Williams had more experience than Ms. Robinson. Even she admitted, I didn't have as much experience to do the position. She was more qualified than I was. If she can say that and she's the applicant then a reasonable jury could conclude the same. If we go to the executive director of surgical services where Ms. Milgaard claims she didn't know, which is a credibility issue that can only be as to whether she's telling the truth or not she knew about the lawsuit but she just didn't know what it was about. Anyone that's intrigued someone filed a lawsuit at that level wouldn't want to know what was it about. So this is an issue of fact to be determined by the fact finder and a jury. I would note before I end that this case because some of the claims were not addressed for the proficiency that we pre-permitted to actually go to trial on all issues even though they were not decided or legally analyzed at the lower level because they've been addressed in the record and this court is to review this de novo. So they can send this directly to trial without having to reverse it and then we go through another series of summary judgments on the other claims. We request that you reverse the lower court's grant of summary judgment and remand it to trial. Thank you so much for your time.